RAÚL NAVEDO TORRES ET AL., Appellants, *v.* THE REGISTRAR OF PROPERTY OF CAGUAS, Respondent.

No. G-62-16. Decided March 19, 1968.

*Gregorio Ramos Rivera* for appellants. The registrar appeared by brief.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

On January 29, 1962 the spouses Raúl Navedo Torres

and Antonia Claudio González signed a promissory note before a notary to the order of the First Federal Savings & Loan Association of Puerto Rico for the principal sum of $3,697.20 and interest thereon at 4.65 per cent annually, binding themselves to pay the principal in 60 consecutive monthly instalments of $61.62 each, the first of which would fall due on March 1, 1962 and the last on February 1, 1967. In order to secure payment thereof, they constituted a mortgage by public deed executed the same day as the note on certain urban property owned by them situated in the Municipality of Caguas. The lien was recorded in the Registry of Property and the note delivered to that institution.

On June 11, 1962, or before the sixth instalment fell due, the Navedo-Claudio spouses executed public deed under No. 43 before Notary Gregorio Ramos Rivera in which, after setting forth the execution of said note and the constitution of the mortgage security, they declared and set forth:

"... that said promissory note issued in favor of First Federal Savings and Loan Association of Puerto Rico is in their possession, since they paid the amount of the principal sum and interest thereon to the creditor Association which returned the obligation to them cancelled by a stamp affixed on the face of the note and over the signatures which reads as follows: 'CANCELLED—5/28/62—First Federal Savings & Loan Ass'n of Puerto Rico,' wherefore the appearing parties wish to cancel and do hereby give their express consent for the cancellation in full in the Registry of Property of Caguas of the mortgage securing such note as to principal, interest and credit for costs in the event of judicial proceeding for collection thereof, thereby freeing the described property from such lien; and in order that such cancellation be made, the appearing parties exhibit to me in this act the note in question which I proceed to identify properly, verifying that it has been actually cancelled by the creditor, and further rendering it useless by perforating the signatures thereon in order to render the same void and without any legal effect."

A few days later a certified copy of that public deed No. 43, accompanied by the original of the note, was pre-

sented in the Registry of Property, Caguas Section, for the purpose of cancelling the lien.

On the following September 19 the Registrar refused to make the cancellation sought by a note which in its pertinent part reads as follows:

"Having examined the cancelled note, cancellation of the mortgage sought by this document is hereby denied on the ground that the cancelled mortgage is represented by a note in favor of First Federal Savings and Loan Association of Puerto Rico or to its order, and that neither the document nor the note states that such obligation has been endorsed in the mortgage contract in favor of the debtors who appear to make the cancellation, a cautionary notice being entered instead."

The Navedo-Claudio spouses appealed to this Court alleging in support of their appeal that the Registrar erred "in requiring an express endorsement of the note in favor of the debtors as a prerequisite for recording the cancellation of the mortgage."

Appellants maintain that "the note affixed by the creditor on the face of the promissory note and over the signatures constitutes sufficient endorsement together with the delivery of the note to the debtors, for the cancellation thereof in the Registry." They cite *National City Bank* v. *Echevarría*, 50 P.R.R. 825 (1937).

Relying on *Hau* v. *Registrar*, 58 P.R.R. 804 (1941), respondent Registrar alleges on the contrary that that does not constitute an effective and sufficient endorsement for the transfer and cancellation of the mortgage obligation in favor of the mortgagors.

On the back of the note there are two impressions of a rubber stamp: one with no signature, but the other is signed by the treasurer of the creditor entity, and it reads: "CANCELLED 5/28/62—First Federal Savings & Loan Ass'n of Puerto Rico—By: (s) A. Hirsch," and it covers part of the signature of codebtor Raúl Navedo González. The first

impression which is not signed by officer A. Hirsch was copied in the deed of cancellation.

The last paragraph of art. 82 of our Mortgage Law provides in its pertinent part that records made to secure sums represented by negotiable paper, to bearer or by endorsement, shall be cancelled upon presentation of an instrument executed by the persons who may have collected the credits, which instrument must set forth that the negotiable paper to bearer or by endorsement was cancelled at the time of its execution. However, in Puerto Rican notarial practice the creditor who has collected his credit is not generally the one who executes the deed of cancellation of the mortgage security. Usually it is executed by the mortgagor to whom the creditor delivers, for such purposes, the document accrediting payment of the obligation.

■■ In the case of negotiable paper to bearer, the mere delivery to the debtor is sufficient to transfer the ownership thereof to the latter. However, if it is to order, the endorsement of the holder completed by delivery is necessary for the effective transfer thereof.[1] Endorsement is the specific manner, but not the only one, for the transfer of notes to order. It is the ordinary means to operate with greater speed and economy the successive substitutions in the exercise of the right arising from the credit.[2]

■ In order for an endorsement to be effective, the mere signature of the endorser affixed by the holder to the same document or to some paper attached thereto is sufficient.[3]

■ Our Code of Commerce, 1932 ed., provides, among other things, in §§ 386 and 387 that an endorsement may

---

[1] Section 383 of the Code of Commerce, 1932 ed.

[2] *Cf. Sucrs. of Ramos Bros.* v. *Muñoz et al.,* 39 P.R.R. 221 (1929); II GARRIGUES, *"Tratado de Derecho Mercantil"* 118 (Madrid 1955), and I *"Curso de Derecho Mercantil"* 627 (2d ed. Madrid).

[3] Section 384 of the Code of Commerce; *Cortada* v. *De Jesús,* 51 P.R.R. 841, 845 (1937); *National City Bank* v. *Echevarría,* 50 P.R.R. 825, 829 (1937).

be either special or in blank, restrictive, qualified or conditional; that an indorsement in blank specifies no indorsee, *"and an instrument so indorsed is payable to bearer and may be negotiated by delivery."*

██ The note issued by the Navedo-Claudio spouses contains proof of its cancellation or extinguishment authorized by the entity owner and holder thereof in whose favor it was issued. The English term "CANCELLED" can not have any significance and consequence other than to annul and render the note ineffective, and to extinguish—by payment thereof, as it appears from the deed of cancellation the record of which was denied—the obligation which is represented. Such proof which obviously establishes the extinguishment of the document as note—negotiable paper —duly dated May 28, 1962 and signed by an officer of the creditor entity, and its material delivery to the debtor spouses,[4] constitutes in our opinion effective and sufficient endorsement in law in their favor for the purpose of cancelling in full the mortgage security in the Registry of Property.

██ On the other hand, once the document is paid to the holder thereof, its negotiable character had been terminated and a regular endorsement could not discharge any function.[5] Furthermore, upon considering the note signed

---

[4] Sections 1142 and 1143 of our Civil Code provide:

"The surrender, made voluntarily by a creditor to his debtor, of a private instrument proving a credit, implies the renunciation of the action which the former had against the latter.

"If in order to invalidate this renunciation, it should be claimed that it is illegal, the debtor and his heirs may support it by proving that the delivery of the instrument was made by virtue of the payment of the debt." Section 1142.

"Whenever the private instrument from which the debt appears should be in the possession of the debtor, it shall be presumed that the creditor delivered it of his own will, unless the contrary is proven." Section 1143.

[5] Section 400 of the Code of Commerce, 1932 ed., provides:

"An instrument negotiable in its origin continues to be negotiable until it has been restrictively indorsed or discharged by payment or otherwise."

and dated as a blank endorsement because it fails to mention the endorsee, the document was payable to the bearer according to § 387 *supra*. Thus, the right of the bearer spouses to cancel the mortgage and seek the extinguishment thereof in the Registry was unquestionable.[6]

The doctrine of the *Hau* case, relied on by the Registrar, is not applicable to the present case. There it was sought to cancel a mortgage security constituted to guarantee the payment of five notes issued "to the order of Mr. Hau Salguero," without showing at all that the five notes had been endorsed by the latter or by his heirs in favor of the then owner of the property who had them in his possession, nor that he had acquired them by any assignment, adjudication, transfer or negotiation.

The decision denying record appealed from will be set aside and the cancellation in full of the mortgage recorded in the Registry is ordered.

---

"A negotiable instrument is discharged:

"1. By payment in due course by or on behalf of the principal debtor." Section 472(1) of the Code of Commerce.

[6] *Cf. Dominici* v. *Registrar*, 59 P.R.R. 760, 763 (1942).